**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMELDO CRUZ-GOMEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>UNION COUNTY JAIL WARDEN,<br>et al.,<br><br>          Defendants. | Civil Action No. 10-5538 (CCC)<br><br>**O P I N I O N** |

**APPEARANCES:**

Emeldo Cruz-Gomez, <u>Pro Se</u>
#635867/191232E
Southern State Correctional Facility
4295 Route 47
Delmont, NJ 08314

**CECCHI**, District Judge

     Plaintiff Emeldo Cruz-Gomez ("Plaintiff" or "Cruz") is currently confined at the Southern State Correctional Facility in Delmont, New Jersey. Plaintiff seeks to bring this action <u>in forma pauperis</u>, alleging violations of his constitutional rights. Pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must review the complaint to determine whether it should be dismissed (1) as frivolous or malicious, (2) for failure to state a claim upon which relief may be granted, or (3) because it seeks monetary relief from a defendant who is immune from such relief. For the following reasons, the complaint will be partially dismissed.

## **BACKGROUND**

Plaintiff seeks to bring claims against a number of correctional officers employed at the Union County Correctional Facility for various incidents that allegedly occurred during his incarceration at the facility.

First, Plaintiff states that in October 2008, he was involved in a fight with another inmate. Plaintiff states that he had previously told an unnamed officer of his problems with the other inmate, yet was not moved. Plaintiff alleges that the October 2008 fight occurred as a result of his not being moved. When Plaintiff, who was treated at the hospital for a split lip, returned to the Union County Correctional Facility, he was placed in lock up. Two days later, Plaintiff was charged with fighting and was given another five days in lock up. Allegedly, when Plaintiff returned to his pod, an inmate yelled at him. Plaintiff claims that he walked away to avoid confrontation. Defendant Officer Loneker allegedly called Plaintiff a "chicken," slid a piece of paper with a chicken on it into Plaintiff's cell, and chanted "chicken" at Plaintiff. Plaintiff kicked the sink out of anger, resulting in a charge of destruction of property, and ten days lock up.

Second, Plaintiff complains that at some point during his incarceration, corrections officers conducted a cell check. Plaintiff states that he "could not get up," and tried to tell the officers that he "did not understand." Plaintiff claims that he

2

tried to tell the officers that he was sick, but they took him out of his cell forcibly.  Plaintiff alleges that he started spitting up blood and was taken to medical.  "Sergeant," presumably Defendant Sergeant Smith, allegedly accused Plaintiff of ingesting something to make himself sick.  As a result, Plaintiff was taken to lock up and charged.

When Plaintiff was released from lock up, he was sent to his pod again.  The officers called for a "stand-up count."  Plaintiff contends that he did not understand what was going on.  Speaking in Spanish, an officer tried to explain a stand-up to Plaintiff, but Plaintiff said he still did not understand.  After a radio call from Defendant Officer Simpson, Sergeant Smith and three other officers entered Plaintiff's cell.  Plaintiff states that he put his hands out to be cuffed, but Officer Smith grabbed Plaintiff's right hand, twisted his arm behind him, and slammed him against the wall.  Officer Smith allegedly kneed Plaintiff in the kidneys and hit him with a flashlight.  Plaintiff claims that Defendant Officer Cesaro and the other officers blocked the entrance of Plaintiff's cell so that no one could witness Sergeant Smith attack him.  Plaintiff was taken to medical after the alleged attack, but he states that he was not checked by the nurse.  After leaving medical, Plaintiff was taken to lock up, was found guilty of charges, and received a sanction of ten days lock up.  After his sanction, Plaintiff was returned to a different pod.

Third, Plaintiff states that in the new pod, his cellmate was unsanitary and smoked. According to Plaintiff, his cellmate told officers that Plaintiff was eating soap and was "crazy." Plaintiff spoke to a social worker about the situation and asked to be moved. The social worker said that Plaintiff could not be moved out his cell, but that he could be placed in the psych ward. Plaintiff states that he was then sent to a different pod, but it is unclear whether his new cell was located in the psych ward. Plaintiff claims that after being placed in his new pod, Defendant Officer Spedy and his partner "constantly made racial slurs and isolated [him] to the brunt of the[ir] jokes." He also claims that they would not let him eat on four occasions. Plaintiff spoke to a social worker and filed grievances against the officer, but he claims that his grievances went unanswered.

Fourth, Plaintiff complains that when he was transferred to a new pod he was returned all of his property except for his commissary. According to Plaintiff, he was told to file a claim.

Fifth, Plaintiff claims that on June 21, 2010, he tripped in the dining hall and his tray "flew out of [his] hands." Officer Spedy allegedly accused him of throwing the tray. Plaintiff states that he tried to explain what happened, but he was unable to do so in English. Plaintiff was charged and he received twelve days lock up.

4

Finally, Plaintiff alleges that while at Union County Correctional Facility, he was never given an interpreter nor was he explained his rights in Spanish. Plaintiff states that "[d]uring [his] brief incarceration at the Union County Correctional Facility, [he] was berated by the staff and beaten because of [his] inability to speak the English language." Plaintiff does not state what relief he seeks for these alleged violations.

## DISCUSSION

### A. Standards for *Sua Sponte* Dismissal

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66, 1321-77 (1996), requires a District Court to screen complaints in civil actions in which a plaintiff is proceeding in forma pauperis, and to sua sponte dismiss any claim if the court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009), the United States Supreme Court refined the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure. In Ashcroft, the Supreme Court hammered the "final nail-in-the-coffin for the 'no set of facts,' standard," which was previously used to determine if a federal complaint stated a claim.

5

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing

the standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46

(1957) (holding that a district court was permitted to dismiss a

complaint for failure to state a claim only if "it appear[ed]

beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief")).

The Supreme Court stated:

> Two working principles underlie our decision in
> Twombly.  First, the tenet that a court must accept as
> true all of the allegations contained in a complaint is
> inapplicable to legal conclusions.  Threadbare recitals
> of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice. . . .  Rule 8
> marks  a  notable  and  generous  departure  from  the
> hyper-technical, code-pleading regime of a prior era, but
> it does not unlock the doors of discovery for a plaintiff
> armed with nothing more than conclusions. Second, only a
> complaint that states a plausible claim for relief
> survives a motion to dismiss.   Determining whether a
> complaint states a plausible claim for relief will. . .
> be a context-specific task that requires the reviewing
> court to draw on its judicial experience and common
> sense.  But where the well-pleaded facts do not permit
> the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief." Fed.
> R. Civ. P. 8(a)(2).

> In keeping with these principles a court considering
> a motion to dismiss can choose to begin by identifying
> pleadings  that,  because  they  are  no  more  than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether
> they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949-50 (citations omitted).

6

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis when deciding whether to grant a Rule 8 dismissal for failure to state a claim. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify claims that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. The Court is mindful that the sufficiency of a pro se pleading must be construed liberally in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007).

**B.   Section 1983 Actions**

A plaintiff may bring a cause of action under 42 U.S.C. § 1983 for certain deprivations of his or her constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct

7

deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Id.; Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662 (1986); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 1605 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## C.   **Excessive Force Claims**

Plaintiff claims that Sergeant Smith assaulted him in his cell while Lieutenant Cesaro and other officers watched.  Plaintiff was a pretrial detainee during the alleged incident, thus his claims are analyzed under the due process clause.  See Bell v. Wolfish, 441 U.S. 520, 535-36, 99 S. Ct. 1861, 1872 (1979).  The Supreme Court has held that the proper inquiry "is whether those conditions amount to punishment of the detainee."  Id. at 535; see also Fuentes v. Wagner, 206 F.3d 335, 342-43 (3d Cir. 2000)(finding that plaintiff did not clearly establish that prison officials used a restraint chair to "punish" him when there was evidence that they used it to stop his "disruptive behavior and maintain prison order and security").

Once the government has the authority to detain a person, however, "it obviously is entitled to employ devices that are calculated to effectuate this detention."  Fuentes, 206 F.3d at 342.  Thus, "restraints that are reasonably related to the

institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment." Id.

In determining whether a pretrial detainee has been subjected to unlawful punishment, the Supreme Court has stated:

> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal- if it is arbitrary or purposeless- a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 538-39.

In this case, Plaintiff's allegations of excessive force may constitute "punishment," thus Plaintiff's constitutional rights may have been violated under Bell. Therefore, Plaintiff has sufficiently met the Twombly/Iqbal pleading standard and his complaint of excessive force against Defendants Smith, Cesaro, and John Doe officers has survived sua sponte screening and the Court will order Defendants to answer the allegations set forth against them.

D.  **Remaining Claims**

Plaintiff seeks to bring a claim against Defendant Loneker, Defendant Spedy, and other officers, for making racial slurs and

9

derogatory remarks. Plaintiff further alleges that in several instances, he was given disciplinary sanctions, which he insinuates were due to his inability to speak English.

As the United States Supreme Court has stated, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." Hudson v. Palmer, 468 U.S. 517, 528, 104 S. Ct. 3194, 3201 (1984). Generally, however, mere verbal harassment does not give rise to a constitutional violation. See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (finding that taunts and threats are not Eighth Amendment violations); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (holding that vulgar language used by a superior did not constitute a § 1983 violation ); Rivera v. Goord, 119 F.Supp. 2d 327, 342 (S.D.N.Y. 2000) (concluding that verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) (stating that "genuine privations of hardship over an extended period of time" give rise to constitutional violations); Murray v. Woodburn, 809 F. Supp. 383, 383-84 (E.D. Pa. 1993) (deliberately pushing [plaintiff's] "mental button" did not give rise to a constitutional violation); Douglas v. Marino, 684 F. Supp. 395, 399 (D.N.J. 1988)(finding that defendant's statement that plaintiff is being "shipped out" did not give rise to a constitutional claim).

Racially discriminatory statements and racial slurs and epithets do not, on their own, establish liability under § 1983. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (finding that verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation) overruled in part by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("[W]ithout even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct."); Haussman v. Fergus, 894 F.Supp. 142, 149 (S.D.N.Y. 1995) ("[T]aunts, insults, and racial slurs alleged to have been hurled at plaintiff by defendants, while reprehensible if true, do not comprise an infringement of constitutional guarantees."); Prisoners' Legal Ass'n, 822 F. Supp. at 187-89 & n.3 (concluding that a corrections officer's use of racial slurs did not amount to constitutional violation).

Allegations that prison personnel used threatening language and gestures are not cognizable claims under § 1983. See Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (claim that defendant laughed at prisoner and threatened to hang him was not cognizable under § 1983). However, threatening language coupled with the use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation. See Douglas, 684 F. Supp. at 398

11

(brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional violation); see also Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (pointing a gun to prisoner's head constitutes excessive force and is a cognizable claim); Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986) (threatening to shoot prisoner constitutes a cognizable claim).

In this case, Plaintiff complains that Officer Loneker called him a "chicken," placed a piece of paper with a chicken under his door, and chanted "chicken" at him. Besides general allegations, Plaintiff has not asserted any facts indicating that racial slurs were used against him. Therefore, Plaintiff's harassment claims do not pass sua sponte screening because they do not rise to the level of a constitutional violation.

Further, Plaintiff asserts generally that his troubles while housed at the Union County facility were due in part to his inability to speak and understand English. In one incident described by Plaintiff, he was accused of ingesting something to make himself sick and was placed in lock up. In a second incident, Plaintiff claims that he tripped and dropped his food tray, but Plaintiff claims that the officer accused him of purposely throwing the tray. Neither of these incidents rise to the level of a constitutional violation; thus, they are not cognizable under § 1983.

12

It is not clear to the Court what relief Plaintiff currently seeks.  He does not appear to challenge his disciplinary hearings.  If he is challenging his lock up, this Court finds that his claims, as pled, are without merit.  The Fourteenth Amendment forbids States from denying "life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  However, "[o]ne must have an interest in life, liberty, or property before due process protections are triggered." Artway v. Att'y Gen. of the State of N.J., 81 F.3d 1235, 1268 (3d Cir. 1996); see also Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979).

The Due Process Clause in itself does not create a liberty interest in being confined in a general population cell rather than in lock up or segregation.  See Hewitt v. Helms, 459 U.S. 460, 466-67 (1983).  However, a convicted prisoner has a liberty interest where a restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).  Even if an inmate is placed in administrative segregation for thirty days, his liberty interest is not implicated because routine segregation does not impose an "atypical and significant hardship." Id.; see also, Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002) (detention for fifteen days and administrative segregation for 120 days was not atypical treatment for New Jersey prisoner); Griffin v. Vaughn, 112 F.3d 703 (3d Cir.

13

1997) (prisoner has no liberty interest in avoiding segregation for fifteen months as a suspect in the rape of a female corrections officer).

Here, the longest amount of time Plaintiff was in lock up was twelve days.  Furthermore, in describing his lock up situations, Plaintiff does not complain of the conditions. Therefore, Plaintiff does not have a state-created liberty interest in avoiding placement in a lock up cell, as lock up was not an "atypical and significant hardship" on him.  Because the facts alleged by Plaintiff do not show that he was deprived of a liberty interest, this Court will dismiss Plaintiff's due process claim.

## CONCLUSION

Based on the foregoing, Plaintiff's excessive force claim will proceed.  Plaintiff's remaining claims will be dismissed without prejudice for failure to state a claim, under 28 U.S.C. § 1915(e). Plaintiff may file a motion to amend his Complaint concerning his dismissed claims.

An appropriate Order accompanies this Opinion.


Dated: January 6, 2012                    ___s/Claire C. Cecchi___
                                          CLAIRE C. CECCHI
                                          United States District Judge

14